LaJarrette BOOKER *v.* STATE of Arkansas

CR 98-111                                        976 S.W.2d 918

Supreme Court of Arkansas
Opinion delivered October 8, 1998

*John H. Bradley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant LaJarrette Booker, Jr., brings this appeal from convictions of aggravated robbery and rape for which he received respectively the sentences of forty years and life imprisonment. Booker does not question the sufficiency of the State's evidence in this appeal, but instead argues the trial court erred in excluding certain evidence he proffered for the purpose of impeaching the testimony of the alleged victim, Sabrina Dean.

The facts may be stated briefly. Dean was driving her car when she was stopped at an intersection in Blytheville. Booker approached Dean's car, pointed a gun at her, and instructed her to move to the passenger's seat as he entered the driver's seat. Booker drove the car out of town, onto a dirt road and into a rural area, where he raped Dean. Booker then drove back to town, and told Dean that he would kill her and her family if she told anyone of the rape. Before departing the car, Booker took Dean's gold chain which Dean said she had purchased for $1,200.00. This entire episode lasted about one hour.

Dean subsequently went home, called her male friend's home, told his wife that she had been robbed, but did not mention the rape. About twenty-five minutes later, Dean reported the rape to the police, who subsequently picked her up and took her to the hospital, where a sexual-assault kit was performed. A forensic examiner with the FBI laboratory later determined the semen found on the vaginal swabs taken from Dean matched Booker's DNA.

On the day of the rape and robbery, the police took Dean from the hospital to the police station where she looked at about 500 photographs. Dean later testified at trial that, while she did not pick Booker as the perpetrator, she "kept getting stuck on his picture. I knew it looked like him. . . . He looked a little darker in life." Dean said that one or two days after she viewed the photographs, she recognized Booker's picture in a yearbook. She then returned to the police station and picked Booker's picture out of a

six-person photographic lineup. Dean later made a positive in-court identification of Booker.

Booker's first point for reversal arises from his pretrial motion wherein he sought to offer proof that, about four years prior to filing her rape charge against Booker, Dean had filed a police report against another man she knew, but withdrew the allegations the day after having filed the report. Booker cited the case of *West v. State*, 290 Ark. 329, 340-A, 722 S.W.2d 284 (1987) (supplemental opinion denying rehearing), to the trial court, and argued that the *West* decision allowed a defendant to impeach his alleged rape victim with evidence that the victim had made a prior rape accusation against another person, but later related the allegation was false or it was proved to be false. Booker argued below and now on appeal that Dean's withdrawal of such a prior accusation amounted to an admission the accusation was false and serves as proof that the victim will make false rape allegations. The prosecutor countered Booker's argument, stating that Arkansas's rape-shield statute precluded evidence such as that proffered by Booker and is intended to prevent a victim's irrelevant prior sexual conduct from being presented to the jury.

After listening to Booker's and the prosecutor's arguments, the trial court stated that, while it disagreed with the *West* decision and believed the rape-shield statute prohibited the introduction of a victim's prior allegation of sexual conduct like that offered by Booker, that decision appeared to allow such evidence if the allegations were false. Nonetheless, the trial court excluded Booker's proffer bearing on Dean's earlier rape allegation because there was no proof presented to show her allegation was false. In short, the trial court utilized A.R.E. Rules 401 and 403 and found that, although Booker's proposed evidence might have some slight relevance, the probative value of such evidence was outweighed by its prejudicial value and therefore should be excluded. As a part of its ruling, the court added that Booker's proffer would confuse and mislead the jury.

Although the trial court initially relied on the *West* decision to conclude that the rape-shield statute does not exclude a victim's prior false allegations of sexual conduct, we note that the rape-

shield statute before the *West* court has since been amended by Act 934 of 1993. Thus, we make that Act a part of our analysis in this appeal. We first point out that, in interpreting the rape-shield statute as it read prior to 1993, this court twice decided that, if a victim's previous sexual allegations were false, evidence of them is not evidence of "prior sexual conduct" that is excluded by the rape-shield statute, but instead is evidence of prior misconduct of the alleged victim, which has a direct bearing upon the alleged victim's credibility. *See State v. Mills*, 311 Ark. 363, 844 S.W.2d 324 (1992); *West*, 290 Ark. at 340-A, 722 S.W.2d at 284 (1987). Our court in *Mills* invited the General Assembly to change the wording of the rape-shield statute to provide that a victim's prior false allegations of sex offenses should be excludable as "prior sexual conduct" if that was the General Assembly's intention.

As previously mentioned, the 1993 General Assembly enacted Act 943 [compiled as Ark. Code Ann. § 16-42-101(b)], which now reads as follows:

> (b) In any criminal prosecution under §§ 5-14-101 et seq. or § 5-26-202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, *evidence of a victim's prior allegations of sexual conduct with the defendant or any other person which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations* is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. (Emphasis added.)

The 1993 act inserted the language emphasized and set out in the foregoing provision, and by doing so, the General Assembly specifically broadened Arkansas's rape-shield law to exclude both (1) evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, and (2) evidence offered by the

defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations. At a pretrial hearing in the instant case, no evidence was presented to show that Dean's prior allegation of rape was true; nor was there evidence provided that she denied having made the prior allegation. Consequently, the rape-shield statute as amended does not apply to the present situation. In addition, neither did Booker under the rationale of *West* and *Mills* demonstrate or prove that Dean's prior allegation had been false and was therefore admissible. Given these circumstances, we hold the trial court did not abuse its discretion when it ruled that if Booker's proffer was admitted, it would be unfairly prejudicial and misleading.

We next turn to Booker's contention that the trial court erred in deciding he could not introduce into evidence Dean's prior suicide attempt. On March 28, 1995, almost a full year before the allegation in this case, Dean ingested several kinds of pills. When she began to get sick, her boyfriend drove her to the hospital, where her stomach was pumped.

Booker argues that he should have been allowed to introduce evidence of this incident because it demonstrates emotional or mental instability and thus challenges her credibility. The State argues that the trial court was correct in determining the suicide attempt had no relevance to the issues in this case and that the only purpose of introducing this evidence would be to attempt to disparage the victim.

The trial court ruled that the evidence was not relevant, and that even if it were, the probative value was substantially outweighed by the danger of unfair prejudice. The trial court has discretion when ruling on relevancy, and a trial court's decision will not be reversed unless the supreme court finds there has been an abuse of discretion. *Cook v. State*, 316 Ark. 384, 872 S.W.2d 72 (1994). In *Cook*, the defendant argued the attempted suicide was relevant to show the victim was attempting to get attention with both the suicide and the allegations made in that case, and to show motive to fabricate her story. *Cook*, 316 Ark. at 387. This

court, however, affirmed the trial court's ruling that the victim's suicide attempt just three months before the alleged rape in that case was not relevant and was therefore inadmissible.

In this case, we find no error in the trial court's ruling. Dean's suicide attempt was almost one year previous to the incident currently at issue, and any emotional or mental instability she may have had at that time would not necessarily still be present one year later. In addition, the suicide attempt was apparently the direct result of an argument with her mother, whereas the rape was in no way precipitated by the actions of Dean, her family, or those close to her. In sum, we hold that the trial court did not abuse its discretion when ruling that the previous suicide attempt had no relevance. Even if some relevance could be assigned to Dean's suicide attempt, we cannot say the trial court abused its discretion in ruling its probative value was substantially outweighed by the danger of unfair prejudice.

In accordance with Rule 4-3(h) of the Arkansas Supreme Court rules, the record has been reviewed for adverse rulings objected to by appellant but not argued on appeal. There were no reversible errors.