STATE of Arkansas *v.* Denver TOWNSEND

CR 05-1263                                    233 S.W.3d 680

Supreme Court of Arkansas
Opinion delivered April 13, 2006

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellant.

*Richard G. Miller, Deputy Public Defender*, for appellee.

BETTY C. DICKEY, Justice. The State brings this interlocutory appeal under the rape-shield statute, Ark. Code Ann. § 16-42-101(c)(3)(b) (Supp. 2003), from a pretrial order allowing the defendant-appellee to introduce evidence that the victim, a six-year-old minor, had been sexually assaulted approximately two years prior to the incidents in the present case. Denver Townsend, a sixty-three-year-old male, was charged with the rape of his six-year-old former step-granddaughter, M.A.D. The rape charge was pursuant to Ark. Code Ann. § 5-14-103 (Repl. 2006), which prohibits deviant sexual activity or intercourse with another person who is under the age of fourteen. Jurisdiction in this case is pursuant to Ark. Sup. Ct. R. 1-2(a)(8). We reverse and remand the pretrial order.

On June 6, 2004, M.A.D. told her eighteen-year-old cousin that she had been sexually molested earlier that spring by Denver Townsend. The police were contacted, and on June 7, a police officer interviewed M.A.D. about the allegations. During the

initial interview, M.A.D. told the officer that Townsend touched her privates twice, using only his hands, and that he "messed with me," "played inside my pants," and touched her where she went to the bathroom. On June 8, 2004, M.A.D. was interviewed by a forensic counselor, with police officers present. During that interview, M.A.D. reported that Townsend, whom she referred to as "Papa," had stuck his "pee-pee" in her "pee-pee" while she was alone in her father's house with him. She stated that Townsend often babysat her while her father was at work. M.A.D. reported that on the two occasions when Townsend inserted his penis into her vagina, both occurring on the couch in her father's living room, Townsend had asked her to "scoot closer" to him. He then pulled his pants down, and partially disrobed her. M.A.D. further reported that Townsend's hands were at her sides, and that she was sitting on a pillow, and sitting like a "v." M.A.D. described Townsend's penis as appearing "big and it had a circle on top," and further, that it was "hairy" and that it felt "hard." M.A.D. referred to the penis as a "dick" or "pee-pee" throughout the interview.

On November 4, 2004, Townsend filed a motion to admit evidence of the victim's prior sexual conduct, that approximately two years prior to the time frame of the allegations in the present case, M.A.D. had been sexually assaulted by a family friend, Billy Kingrey. Kingrey had pled guilty to the crime and was sentenced to prison. The detective who interviewed M.A.D. about the Kingrey incident reported that M.A.D., then four years old, could provide few details about the incident. At that interview, M.A.D. indicated that Kingrey had touched her privates, and stated that he had touched her with his "thingy." When asked, M.A.D. could not describe the "thingy," and in the interview she communicated chiefly by pointing. M.A.D. stated that Kingrey's action "hurt," and made no allegation that Kingrey penetrated any of her orifices. M.A.D. also indicated that she, Kingrey, or both may have been clothed during the incident. Kingrey was charged with the rape of M.A.D. and another little girl, and although he admitted to digital vaginal penetration of the other little girl, he would admit to no wrongdoing with regard to M.A.D. He eventually pled guilty to sexual assault.

The trial court, after a January 10, 2005 hearing on the motion, ruled that the appellee could ask M.A.D. for confirmation of the following facts:

1) Before Denver was living with her somebody hurt her.

2) She was living with her grandmother Janice.

3) She was four years old.

4) The person was named Billy Kingrey.

5) He touched her in a private place.

6) She told police about Billy.

7) She told police Billy put his pee-pee inside her pee-pee.

8) Billy went to jail because of what he did.

The State appeals that ruling, raising one point on appeal: *The trial court clearly erred by granting the appellee's motion to admit evidence that the victim, M.A.D., was raped by another perpetrator when she was four years old.*

## Rape-Shield Issue

Under the rape-shield law, section 16-42-101, evidence of a victim's prior sexual conduct is inadmissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. Ark. Code Ann. § 16-42-101(b). An exception to this rule exists when the trial court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. Ark. Code Ann. § 16-42-101(c)(2)(c). The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their sexual conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Graydon v. State*, 329 Ark. 596, 953 S.W.2d 45 (1997). Accordingly, the trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the trial court's decision unless it constitutes a clear error or a manifest abuse of discretion. *Id.*

Here, Townsend seeks to introduce evidence that M.A.D. was sexually assaulted prior to the alleged incidents in the present case. The statute under which Townsend is charged, prohibiting sexual intercourse or deviant sexual activity with another person

under the age of fourteen, mandates that a person who engages in the proscribed activity is guilty of the crime, regardless of whether there was consent. *Clay v. State*, 318 Ark. 550, 886 S.W.2d (1994). This court has stated that when consent is not an issue, whether the victim had sexual relations with a third person is entirely collateral, and therefore is not relevant. *Evans v. State*, 317 Ark. 532, 878 S.W.2d 750 (1994).

In cases involving the rape of a minor, this court has uniformly and consistently excluded evidence of the minor's prior sexual activity, because in those cases the only two issues to be determined are the fact of the occurrence of the prohibited activity and the age of the minor. *See, e.g., Standridge v. State*, 357 Ark. 105, 161 S.W.3d 815 (2004); *Turner v. State*, 355 Ark. 541, 141 S.W.3d 352 (2004); *M.M. v. State*, 350 Ark. 328, 88 S.W.3d 406 (2002); *Ridling v. State*, 348 Ark. 213, 72 S.W.3d 466 (2002). Anything not pertaining to one of those two issues is not relevant in cases involving the rape of a minor.

In *Ridling, supra,* we said, "It is difficult to understand what relevance [the victim's] other sexual encounters have to do with whether Ridling was having sex with her before her fourteenth birthday. Unfortunately, the fact that she was having sex with one older man does not prevent her from having sex with another older man at the same time." *Ridling*, 348 Ark. at 226, 72 S.W.3d at 481. In *M.M., supra,* the appellant, also a minor, sought to introduce evidence that the nine-year-old victim had sexual experiences prior to her rape by him. There, we stated, "The testimony that M.M. sought to introduce was evidence of the victim's sexual history, but because the victim was under the age of fourteen, the child's sexual past was completely irrelevant to the question of whether M.M. engaged in sexual activity with J.H. [the victim]." *M.M.*, 350 Ark. at 333, 88 S.W.3d at 409-10. The defendant in *Standridge, supra,* sought to admit evidence that the minor victim in his case had made similar accusations of sexual abuse by her then-stepfather when she was four years old. In that case we said, "However, at the rape shield hearing, the victim here testified that, although she did not remember much of the circumstances surrounding the allegations against Webb [the stepfather], because she was only four years old at the time, she remembered what he did to her, and she stated that the allegations against Webb were true. This testimony falls squarely within the ambit of section 16-42-101(b), which excludes 'evidence of a victim's prior alle-

gations of sexual conduct with . . . any other person which allegation the victim asserts to be true[.]' " *Standridge,* 357 Ark. at 115, 161 S.W.3d at 819.

Townsend advances three arguments to support the proposition that M.A.D.'s previous sexual encounter with Kingrey is relevant to his case and that its probative value outweighs its inflammatory or prejudicial nature. The first is that it is relevant because of the close proximity in time between the prior abuse and the present allegations. We first observe that as much as two years may have elapsed between the two incidents, and two years is a significant span in the life of a six year old. Also, if the appellee is asserting that M.A.D. is confusing the alleged present incident with her prior sexual assault by Kingrey, such a conclusion is rendered unlikely by a comparison of her descriptions of the two incidents. Her description of the Kingrey incident is vague, indefinite, and lacking in detail. By contrast, the present allegations are graphic descriptions, notable for their clarity, definition, and degree of detail. For example, in the Kingrey incident she could not describe a penis and referred to it as a "thingy," while in the alleged present incident she gave a very detailed description, and used the terms "dick" and "pee-pee."

Townsend also asserts that M.A.D.'s precocious knowledge of sexual matters may be imputed by a jury to her alleged encounter with him, when it actually may be attributable to her prior encounter with Kingrey. Based on the evidence before us in this particular case, that argument rests on a factually-flawed premise, because it is apparent that at the time M.A.D. gave her description of the Kingrey incident, which she did shortly after it occurred, her knowledge of sexual terminology and methodology was appropriately rudimentary. In that case she could not describe a penis, referring to it as a "thingy," and she communicated largely by pointing. She made no allegations of penetration in that case, and both she and Kingrey may have been fully or partially clothed when the incident occurred. This stands in stark contrast to the vivid and detailed description of her alleged encounter with Townsend, the details of which are given above. Thus, considering the evidence presented, it can be deduced that M.A.D.'s current store of sexual knowledge was acquired subsequent to her sexual abuse by Kingrey, and this conclusion negates the relevance of the prior encounter in the present case.

██ Some states have rejected the argument that evidence of a child's prior sexual experiences is admissible to prevent the

jury from assuming that the defendant is responsible for the child's lack of sexual innocence. *See State v. Clarke,* 343 N.W.2d 158 (Iowa 1984); *People v. Arenda,* 416 Mich. 1, 330 N.W.2d 814 (1982). Other states accept the argument and allow such evidence. *See State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071 (1988); *State v. Jacques,* 558 A.2d 706 (Me. 1989); *Summit v. State,* 101 Nev. 159, 697 P.2d 1374 (1985); *State v. Budis,* 243 N.J. Super. 498, 580 A.2d 283 (1990). Some of the states admitting evidence of prior sexual encounters in these situations have adopted various tests when assessing the relevancy of such evidence. *See, e.g., State v. Oliver, supra; Com. v. Ruffen,* 399 Mass. 811, 507 N.E.2d 684 (1987); *State v. Budis, supra; State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990). In *State v. Pulizzano,* the Wisconsin Supreme Court articulated five factors for which the defendant must offer proof prior to trial in order to admit evidence of a child's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge. The factors are: (1) that the prior act clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; (5) that the probative value of the evidence outweighs its prejudicial effect. *Pulizzano,* 155 Wis. 2d at 656, 456 N.W.2d at 335. We think that this analytical approach has merit when ruling on the admissibility of a child's previous sexual experiences. We also believe that a comparison of the child's descriptions of the respective sexual encounters is relevant in cases such as these, because if a description is given after the first incident but before the second, it provides a basis for an assessment and comparison of the child's degree of sexual knowledge at the time of each incident. Also, the use of common or similar terms or phrases by the child in the various descriptions may indicate a congruent similarity of the acts in different incidents, and is therefore relevant. The similarity requirement makes it more likely that the sexual knowledge displayed by a victim in one case was actually derived from a prior encounter, and that assumption is essential to the defendant's argument in these situations.

█ In the present case, Townsend easily satisfies the first factor, because Kingrey's conviction is clear proof that a prior incident, in fact, occurred. However, his argument fails in regard to the second factor, because there is little evidence that the prior acts resemble those of the present case. M.A.D.'s descriptions of

the two incidents are substantially dissimilar as to definition and terminology, which supports the conclusion that she acquired her current stock of sexual knowledge after the first incident, and the respective descriptions show little similarity between the two acts described.[1]

As the appellee partially concedes in his brief, these two arguments are really attacks on the credibility of the victim. Townsend seems to argue that the victim may be confusing the prior and the alleged instant episode or that her precocious degree of sexual knowledge is derived from the prior encounter, to ultimately prove that the victim in the present case is either mistaken or is fabricating the incidents. Although introducing prior episodes of sexual conduct to attack the credibility of the victim is not absolutely barred by the rape-shield statute, it has been treated unfavorably by this court. For example, in *Butler v. State*, 349 Ark 252, 82 S.W.3d 152 (2002), we said, "Here, Butler proffered the testimony as evidence of B.J.M.'s prior inconsistent statements to undermine her credibility. As such, the proffered testimony violated the rape-shield statute." *Butler*, 349 Ark. at 266, 82 S.W.3d at 160. In *Turner v. State*, 355 Ark. 541, 141 S.W.3d 352 (2004), the defendant sought to introduce evidence proving that the victim lied when she told police that she was a virgin prior to her rape by the defendant. There we stated, "Contrary to Turner's urging, such evidence clearly falls within the parameters of the rape-shield law as it is prior sexual conduct offered for the purpose of attacking the appellant's credibility." *Turner*, 355 Ark. at 546, 141 S.W.3d at 355.

Though the rape-shield statute is normally applied to situations where the public airing of the alleged past unchastity of an adult woman and its attendant humiliation may make her reluctant to report a rape or to prevent the defendant from insinuating that the sexual complicity of the woman made the compulsion element of a rape unnecessary, its larger purpose is to protect rape victims from the trauma caused by the review of past

---

[1] Though the trial court's order of September 26, 2005, permits Townsend to ask M.A.D. for confirmation of the fact that "She told police he put his pee-pee in her pee-pee," the record contains nothing showing that evidence of this "fact" was before the circuit judge. The record contains no evidence of similarities between M.A.D.'s descriptions of the two incidents other than those noted above. If additional evidence of such similarities is adduced at a future hearing, then that may well justify the admission of the prior incident.

sexual experiences, and this protection is especially needed in cases involving minor victims. Therefore, we find that evidence of the prior sexual abuse of a minor is within the ambit of the rape-shield statute.

Here, there is a substantial risk of further emotional stress and prejudice to the minor victim, whose life has already been unusually traumatic. Because of this risk, we believe that in this case, and in similar situations, if a trial judge does determine that evidence of prior sexual incidents involving a minor is admissible, then the information should be elicited from a source other than the child, if possible. In the present case, if the evidence is deemed to be admissible, the trial judge should allow questioning of police officers involved in the prior case, or the parties could simply stipulate to the relevant facts. *See, e.g., State v. Budis*, 243 N.J. Super. at 513, 580 A.2d at 292 (where the New Jersey Superior Court, faced with a similar situation, stated, "Indeed, this evidence could have been elicited from another witness testifying as to T.D.'s statements, from the official documents involving T.D.'s step-father's convictions, or by stipulation, in any event with an appropriate limiting instruction"). In the event that another witness does testify as to M.A.D.'s out-of-court statements to prove the truth of the matters asserted therein, those statements may be admissible as an exception to the hearsay rule, provided the trial court finds that they are sufficiently trustworthy. Ark. R. Evid. 804(b)(7).

Townsend finally urges that if medical evidence is presented to the jury consistent with the allegations against him, then evidence of the victim's prior sexual encounter is essential to the cross-examination of medical experts and to prevent the jury from mistakenly concluding that only he could be responsible for any medical evidence consistent with rape. The problem with this argument is that it seeks a preemptive introduction of the evidence in order to combat a speculative and hypothetical eventuality. In this case a medical examination of the victim has taken place, and no physical manifestations consistent with rape have been found. It is highly conjectural to postulate that any medical evidence will be offered by the State at trial. Thus, the possible and contingent relevance of this speculative evidence does not suffice to justify the premature admission of the evidence of M.A.D.'s prior encounter with Kingrey. If the State does offer medical evidence consistent with the allegations against the appellee, and the trial judge

determines that there is a sufficient degree of similarity between the prior and present acts to plausibly support the appellee's argument that the prior and not the present incident was the source of that evidence, then the trial judge may allow the evidence of M.A.D.'s prior encounter with Kingrey to be admitted for purposes of rebuttal, or to show that Townsend was not necessarily responsible for that evidence.

We acknowledge the substantial latitude given the trial court as to the admissibility of evidence under the rape-shield statute and the efforts made by the court to limit the prejudicial effect of that evidence in this case. Nevertheless, we conclude that the sexual assault of M.A.D. by Billy Kingrey is not relevant to the allegations against the appellee unless the State introduces medical evidence consistent with those allegations or unless the trial court properly determines that it is admissible after applying the five *Pulizzano* factors listed above. Accordingly, we reverse and remand the decision of the trial court for a new rape-shield hearing in accordance with this opinion.

Reversed and remanded.

HANNAH, C.J., and GLAZE, J., concur.

JIM HANNAH, Chief Justice, concurring. I concur in the decision to reverse and remand this case for a new hearing on the admission of evidence of prior sexual abuse suffered by M.A.D. However, I write separately because the decision on admissibility of the evidence by the circuit court and this court is premature. Denver Lee Townsend impermissibly sought a decision of the circuit court on admission of evidence to counter arguments and inferences that the State *might* make at trial. On appeal, the State seeks and obtains an impermissible advisory opinion, again based on hypothetical events at a trial that has not yet been held. This case does not present a controversy on admission of evidence of prior sexual abuse that may be decided before trial.

Townsend is charged with the rape of six-year-old M.A.D. He argues before this court that he moved for admission of the evidence out of concern that "the State *may* argue or the jury may infer, that knowledge of an explicitly sexual nature is not generally understood by a child as young as M.A.D. . . . ." (emphasis added). He argued below in the motion under the rape-shield statute, Ark. Code Ann. § 16-42-101 (Repl. 1999), that the evidence was

"relevant because the State *may* argue" (emphasis added) that a child of the victim's age "would not have the sexual knowledge that she has unless she had been abused by the defendant." He further argued below that the evidence was "relevant to show the reason" that a child of the victim's age "would make such allegations, a question often posed to the jury by the State."[1] However, as yet, M.A.D. has not testified, and we have no way of knowing if she will testify in such a way as to convey what the majority refers to as a "precocious knowledge of sexual matters." Further, we have no way of knowing if the State will argue at trial that M.A.D.'s knowledge, which is as yet unknown and unde- fined, constitutes an inference that Townsend raped her. The circuit court erred in granting the motion to admit evidence of the prior sexual abuse before there was a controversy on which to judge its relevancy and admissibility. The majority engages in the same error in ruling before M.A.D. testifies and the State puts on its evidence and argument that the evidence is inadmissible. The majority opinion is advisory. As yet, we have no idea of whether the evidence of the prior sexual abuse may become relevant and admissible under Ark. Code Ann. § 16-42-101 (Repl. 1999).

The purpose of the rape-shield statute is to protect victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Standridge v. State*, 357 Ark. 105, 161 S.W.3d 815 (2004); *Flurry v. State*, 290 Ark. 417, 720 S.W.2d 699 (1986). What Townsend argues is at issue, is not M.A.D.'s conduct but rather Billy Kingrey's sexual assault of a four-year-old child. However, M.A.D. will certainly suffer emotional distress from being forced to relive this past abuse. If the evidence at trial results in the circuit court, under the requirements of the rape-shield statute, conclud- ing that evidence of Billy Kingrey's prior conviction of raping

---

[1] Townsend also argued below that the evidence of the prior abuse is relevant to the question of the victim's credibility. Credibility concerns the question of whether and to what extent a witness is to be believed by the trier of fact. *See, e.g., Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). Obviously, because Townsend professes his innocence, he must argue that the victim is mistaken or lying when she says that he raped her. It seems unlikely that evidence of the prior abuse by Kingrey, which is not disputed by Townsend, will cast light on the victim's credibility. However, as with the questions of what the State might argue or what questions the State often poses to the jury, the issue is purely anticipatory and is not ripe for review.

M.A.D. is relevant to Townsend's guilt and is admissible, the concern about embarrassing M.A.D. should be addressed by the circuit court, perhaps by stipulation of the prior conviction, or having a third person introduce the conviction order. The ruling by the circuit court on the evidence before trial and ordering that Townsend could raise the issue with M.A.D. and other witnesses was inconsistent with the rape-shield statute.

The decision by the circuit court was likely reached because under Ark. Code Ann. § 16-42-101(c)(1) (Repl. 1999), a criminal defendant may bring a written motion "at any time prior to the time the defense rests stating that the defendant has an offer of relevant evidence prohibited by subsection (b) of this section and the purpose for which the evidence is believed to be relevant . . . ." Pursuant to Ark. Code Ann. § 16-42-101(c)(2)(A) (Repl. 1999), the circuit court is to hold an in camera hearing on the motion "no later than three (3) days before the trial is scheduled to begin, or at such later time as the court may for good cause permit." It is the defendant's responsibility to pursue the motion and bring the matter of a hearing to the court's attention. *Overton v. State*, 353 Ark. 697, 120 S.W.3d 76 (2003). Townsend did so, and had he failed to do so before trial, the State might argue that he waived the right to raise the issue later. However, the statute allows the defendant to raise the issue at any time prior to the defense resting and allows for a hearing. Likely, Townsend moved before trial out of an abundance of caution.

Townsend's concerns are strictly prospective and as yet hypothetical. The decision in the circuit court was impermissibly based on what Townsend anticipated the State might do and what knowledge M.A.D. would display at trial. Under the facts of this case, it will only be at trial that a justiciable controversy will arise; accordingly, this court's decision on admissibility of the evidence of the prior abuse on appeal is merely advisory. It is not the practice of this court to anticipate future litigation and issue advisory opinions. *Wright v. Keffer*, 319 Ark. 201, 890 S.W.2d 271 (1995).

The better approach is for the circuit court to take the motion under advisement and wait until trial so that rulings may be made on each issue as a controversy arises. This will allow the circuit court to directly address each issue as it arises and tailor any admission to comply with the protection M.A.D. should be afforded. The State is clearly on notice of the possibility that making an argument or eliciting any testimony that suggests that any knowledge of sexual matters that M.A.D. expresses may make

some evidence of the prior abuse relevant to Townsend's guilt in the present case.[2] If the State argues that M.A.D.'s knowledge of sexual matters infers Townsend's guilt, he might move to admit evidence of the prior abuse to counter that argument by showing her knowledge may have other origins. It is simply impossible to decide in advance of trial under these facts that no evidence of the prior abuse will be relevant and admissible under Ark. Code Ann. § 16-42-101. The majority's opinion is advisory, and the circuit court should hold the motion under advisement and decide issues of admissibility of evidence of prior abuse as they arise at trial.

---

[2] Similarly, any medical evidence that may be offered which Townsend believes attributes to him physical evidence of abuse committed by Kingrey is an issue that has not yet been raised and should be decided only if and when the issue arises.