Heather KELLER *v.* STATE of Arkansas

CR 06-1418                                   263 S.W.3d 549

Supreme Court of Arkansas
Opinion delivered September 27, 2007

*Gregory E. Bryant,* for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Justice. Appellant Heather Raye Keller was convicted by a jury in Pulaski County Circuit Court of the rape of C.R., a person under fourteen (14) years of age at the time of the sexual act, and the violation of a minor K.S., a person over fourteen (14) years of age at the time of the act. The circuit court sentenced Keller to fifteen (15) years' imprisonment for the rape conviction and six (6) years' imprisonment for the violation-of-a-minor conviction, to be served consecutively. Keller does not appeal her conviction. Instead, she challenges the circuit court's order denying her request during the sentencing phase to present evidence that C.R. had made prior allegations of sexual abuse against a third party. We find no error and affirm the circuit court.

As a threshold matter we must address the issue of whether Keller has preserved her argument for appeal. *See Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). Keller asks this court to reverse the circuit court's decision to exclude the evidence of C.R.'s prior allegations of sexual abuse during the sentencing phase. She also seeks to have her sentence for the rape conviction reduced from fifteen (15) to ten (10) years' imprisonment. The State argues that Keller never challenged the imposition of the fifteen-year sentence below, and, therefore, she did not preserve the challenge to her sentence for appeal. We agree that Keller never objected to the sentence in the circuit court, and thus her request to reduce the fifteen-year sentence is not preserved for appellate review. However, the record reflects that Keller did preserve her argument that the evidence of C.R.'s prior allegations of sexual abuse was admissible during the sentencing phase. Because we conclude that she preserved her challenge to the circuit court's evidentiary ruling, that argument is subject to review on appeal.

For several years, Keller was involved in the operation of daycare facilities, first as an employee and then as an owner. Eventually, she started an after-school acting group for children. Keller first came into contact with C.R. when C.R. was eight years old and was attending the daycare facility where Keller was employed. When Keller opened her own daycare, C.R.'s parents transferred her to the new daycare, and when the acting group began, C.R. was also sent there. In 1994, C.R.'s parents divorced,

and they began leaving her at the daycare after hours. They also began asking Keller to watch her overnight. It was at this point, when C.R. was nine or ten years old, that the sexual abuse began, and the abuse lasted until C.R. was thirteen or fourteen years old.

Keller devised a scheme in which she used C.R.'s religious upbringing to make C.R. believe that Keller was possessed by both angels and demons. Keller would tell C.R. that an angel wanted to talk to her, and then Keller would lie down and convulse, and upon rising Keller would be wearing a new, distinct facial expression and would have altered her voice. Keller formulated detailed stories about the angel and demon characters and how they came to be in her body. One of the angel characters was "Rickey," a male archangel, who became C.R.'s boyfriend and performed various sexual acts on C.R. through Keller's body. C.R. also reported being abused by several other angel and demon characters. At trial, K.S. and several other unnamed victims testified to being told similar stories by Keller.

C.R. did not report the abuse by Keller until she was twenty-one years old. However, when she was twelve, C.R. did make allegations that her aunt had sexually abused her when she was four or five years old.

Prior to trial, Keller filed a rape-shield motion to have the evidence of C.R.'s prior allegations against her aunt admitted during the guilt phase of trial. During the rape-shield hearing, defense counsel argued that the evidence was admissible to attack C.R.'s credibility as a witness because she did not report Keller's abuse at the same time she made allegations against her aunt. When questioned about this issue, C.R. testified that she did not report Keller at that time because her extended family tried to defend her aunt by saying that Keller was the real abuser, and C.R. was afraid that if she revealed Keller's abuse, her parents and family would not believe the true allegations against her aunt. The circuit court decided the evidence should be excluded under the rape-shield statute because any relevance would be outweighed by the high potential of prejudice to the victim.

During the sentencing phase of trial, the prosecutor asked C.R. what effect Keller had upon her life, and defense counsel objected, stating that such questions would be misleading to the jury. Specifically, defense counsel argued that the jury would be led to believe that all of the bad circumstances of C.R.'s childhood could be blamed on Keller, and defense counsel asked to be

allowed to cross-examine C.R. about her prior allegations against her aunt in order to show that Keller was not the sole cause of her childhood problems. The circuit court determined that the evidence was still barred by the rape-shield statute, and C.R. was allowed to testify about the impact of Keller's actions on her life.

Under Ark. Code Ann. § 16-97-103, evidence relevant to sentencing can be submitted to the jury, "provided no evidence shall be construed under this section as overriding the rape shield statute." Ark. Code Ann. § 16-97-103 (Repl. 2006). The rape-shield statute, Ark. Code Ann. § 16-14-101 (Repl. 1999), was enacted with the purpose of protecting victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *See Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004). Section 16-42-101(b) provides that in a criminal prosecution for a sex crime the following evidence is not admissible:

> [O]pinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, *evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true*, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations *is not admissible by the defendant*, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

Ark. Code Ann. § 16-42-101(b) (emphasis added). A defendant may, however, file a rape-shield motion under subsection 16-42-101(c) requesting that the circuit court make a determination as to the admissibility of the proposed evidence. Ark. Code Ann. § 16-42-101(c). Upon holding a hearing, if the circuit court determines that the offered proof is relevant to a fact in issue, "and that its probative value outweighs its inflammatory or prejudicial nature," the circuit court may grant the defendant's motion to admit the evidence. Ark. Code Ann. § 16-42-101(c)(2)(C).

Thus, the rape-shield statute is not a complete bar to the introduction of evidence of a victim's prior sexual conduct; but, the circuit court is vested with a· great deal of discretion in ruling

whether the evidence is relevant. *See Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995). This court will not reverse the circuit court's decision as to the admissibility of rape-shield evidence unless its ruling constituted clear error or a manifest abuse of discretion. *Parish v. State, supra.*

Our opinion in *Ridling v. State*, 348 Ark. 213, 72 S.W.3d 466 (2002), involved facts and issues very similar to the case at hand. In that case, Ridling was charged with the rape of a girl under fourteen (14) years of age. During the guilt phase of trial, he asked to submit evidence that the victim had sexual relationships with other men while she was underage and having a relationship with Ridling. *Id.* The circuit court denied Ridling's motion, and Ridling attempted to introduce the same evidence during the sentencing phase to show "lack of any substantial harm" to the victim because she was engaging in other sexual relationships with older men while she had a relationship with Ridling. *Id.* The circuit court again denied Ridling's request without holding a separate hearing to determine the admissibility of the evidence during the sentencing phase. *Id.* We affirmed, holding that when an in camera review of the same evidence was held prior to the guilt phase, the circuit court was not required to hold a second, identical hearing, and we concluded that the circuit court did not abuse its discretion in denying Ridling's request to present the evidence during sentencing. *Id.*

■ Likewise, in the instant case, the circuit court held a pretrial hearing in which it concluded that the evidence of C.R.'s prior allegations against her aunt was more prejudicial to the victim than probative, and the court came to the same conclusion during the sentencing phase. We agree with the circuit court's evidentiary ruling. The relevance of the evidence to rebut C.R.'s claim that Keller caused the majority of her childhood problems was slight in comparison to the evidence that Keller occupied a role of trust in C.R.'s life as care giver and teacher and used that position of trust to abuse C.R. for almost four (4) years. Furthermore, in view of the highly prejudicial nature of the evidence along with our deferential standard of review, we cannot say that the circuit court's decision constituted a manifest abuse of discretion.

■ We also note that defense counsel elicited the very testimony that is the focus of Keller's argument on appeal. It was only after defense counsel suggested a figure of one-hundred

percent during cross-examination that C.R. attributed one-hundred percent of her childhood problems to Keller. One who is responsible for error cannot be heard to complain of that for which he or she is responsible. *Wyles v. State*, 357 Ark. 530, 182 S.W.3d 142 (2004).

Affirmed.