Cite as 2020 Ark. 327

# SUPREME COURT OF ARKANSAS

No. CR-20-60

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 15, 2020 |
| JERRY W. MCKEE | | APPEAL FROM THE GREENE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 28CR-18-641] |
| V. | | |
| | | HONORABLE BARBARA HALSEY, |
| STATE OF ARKANSAS | | JUDGE |
| | APPELLEE | |
| | | |
| | | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Jerry McKee appeals his conviction for one count of rape in Greene County Circuit Court, raising six points on appeal. Our jurisdiction is proper pursuant to Rule 1-2(a) of the Rules of the Supreme Court and Court of Appeals of Arkansas. We affirm.

I. *Background*

The State formally charged McKee with one count of rape on September 17, 2018. The criminal information alleged that between the dates of July 27 and August 3, 2018, McKee engaged in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age in violation of Ark. Code Ann. § 5-14-103 (Supp. 2019).

Before trial, McKee filed a motion to suppress evidence, specifically referring to "[a]ny and all video tapes, body cameras, eyewitness testimony, or any other mention of the standoff at the defendant's home prior to his arrest." The circuit court denied this motion. McKee

also filed a motion to include evidence otherwise excludable by Ark. Code Ann. § 16-42-101 (Supp. 2019). The circuit court denied that motion as well.

At trial, the first witness for the State was Lieutenant Rhonda Thomas of the Paragould Police Department. Thomas testified that she works child-abuse cases. Thomas stated that on August 3, 2018, she received a report involving McKee and a minor, C.T. C.T. was then brought to the police department for an interview. After the interview, Thomas sent two detectives to arrest McKee. She was then advised that the detectives were in a standoff with McKee outside his residence; McKee was brandishing a knife and threatening to hurt himself. After the standoff was quelled, McKee voluntarily submitted to an interview with police.

The recording of McKee's interview with Thomas was then played for the jury. McKee told police that C.T. had been staying at his house for approximately two months and that C.T. refers to McKee as her uncle. McKee stated that he had taken C.T. to the doctor earlier that day. When the interviewer asked why McKee had taken C.T. to the doctor, he stated: "It was last weekend when I hurt her. (Inaudible) bled a lot, so I figured I'd busted her cherry or whatever you want to call it." When asked how C.T.'s injury occurred, McKee stated, "We was wrestling." When asked where this occurred, McKee stated, "At home, in my bedroom.... She slept in the bed with me because that's where the air conditioner was." When asked what C.T. was wearing at the time, McKee stated, "I ain't for sure. She might have been naked, I ain't for sure.... Because even with the air conditioner in there, the house ain't very cool."

2

When investigators told McKee that C.T. had alleged he put his private part in her private part, McKee denied the allegation. McKee maintained that his private part wouldn't get hard at this point in his life. He said that he and C.T. were "wrestling," that they were both "naked," and that he "got out of the way" when C.T. said she had to pee. McKee said that C.T. was bleeding a lot at this point. For the next few days, McKee gave C.T. feminine hygiene pads, until taking C.T. to the doctor, which is when the initial report to police was made.

After the conclusion of McKee's recorded interview, Lieutenant Thomas added that C.T. was admitted to Arkansas Children's Hospital for her injuries, which were extensive.

The next witness for the State was Tron Beesley, who also worked in the Paragould Police Department. Beesley was one of the officers Lieutenant Thomas sent to arrest McKee. Beesley testified that upon making contact with McKee outside his residence, McKee drew a knife and held it to his neck. McKee stated that he took C.T. to the doctor because C.T. had gotten hurt while they were wrestling, and C.T.'s injury was getting infected. The standoff de-escalated, and McKee submitted to the officers. The officers searched McKee's home. Officers logged several items from the search, including feminine hygiene products, pads, pornographic DVDs, a sex toy, sheets, panties, towels, and a mattress stained with what Beesley believed was blood. The officers also found what Beesley described as "booby trap[s]" inside the home, but it is not clear if any were operational.

The next witness to testify was C.T. C.T. testified that she knew the difference between good touches and bad touches and that McKee had touched her in a bad way. C.T.

3

was provided a doll with which she could demonstrate. C.T. stated that McKee was behind her and pulled down her panties. She said, "He put his middle in my middle," and, "It was his private to my private." She said she told him to stop, that it hurt, and that she continued to bleed in the days afterward. She said she was then taken to the hospital where she had to have surgery.

The next witness to testify for the State was Lanie Haley, who worked for Paragould Pediatrics. Haley testified that C.T. and McKee came to her office and that the reason for the visit was bleeding from C.T.'s vaginal area. It had been a week since the injury. McKee told Haley that the injury occurred while he and C.T. were wrestling. Haley said this was a red flag to her because this would have been the first time an injury as significant as C.T.'s would have come from wrestling. Haley felt the injury was the result of abuse and made a report to police.

The next witnesses to testify for the State were Phillip Raines and Colton Waters of the Arkansas State Crime Lab. Their testimony provided that DNA from C.T. was found on the sex toy recovered from McKee's residence.

The next witness to testify for the State was Dr. Clingenpeel, a child-abuse pediatrician. She testified that she supervises the nurse who examined C.T. at Arkansas Children's Hospital and that she reviewed the examination on video. She explained that C.T. had severe and extensive lacerations to her anogenital tissues, extending from inside her vagina to her anal folds. C.T.'s injury required surgery to repair, and there were signs the injury had already begun to heal by the time C.T. was examined by physicians. This type of

4

injury "would be more typically associated with vaginal childbirth, although that cause would not be physiologically possible in this patient," she concluded. Instead, "an injury of this magnitude would require" what Dr. Clingenpeel called a "vaginal impalement mechanism."

After Dr. Clingenpeel's testimony, the State rested its case. McKee made a motion for a directed verdict, which was denied, and renewed his motion for directed verdict at the close of all evidence, which was also denied. The jury convicted McKee of rape, and he was sentenced to life in prison. McKee timely appeals to this court.

II. *Sufficiency of the Evidence*

Double-jeopardy considerations require this court to review a challenge to the sufficiency of the evidence before we review the other issues on appeal. *Jones v. State*, 349 Ark. 331, 335, 78 S.W.3d 104, 107 (2002).

When we review the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Thomas v. State*, 2020 Ark. 154, at 7–8, 598 S.W.3d 41, 45. That means we consider only the evidence that supports the verdict and determine whether the verdict is supported by substantial evidence. *Id.* Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.*

McKee was convicted of one count of rape. To prove the State's charge, the prosecution had to establish that McKee engaged in "sexual intercourse or deviate sexual activity with another person . . . who is less than fourteen (14) years of age." Ark. Code Ann.

5

§ 5-14-103(a)(3)(A). "Sexual intercourse" means penetration, however slight of the labia majora by a penis. Ark. Code Ann. § 5-14-101(12). "Deviate sexual activity" means

any act of sexual gratification involving:

(A) The penetration, however slight, of the anus or mouth of a person by the penis of another person; or

(B) The penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person;

Ark. Code Ann. § 5-14-101(1)(A)–(B). "Sexual gratification" is not defined in the statute, but this court has construed the words in accordance with their reasonable and commonly accepted meanings. *Farmer v. State*, 341 Ark. 220, 223, 15 S.W.3d 674, 676 (2000). This court has further held that "the State is not required to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act." *Rounsaville v. State*, 374 Ark. 356, 360, 288 S.W.3d 213, 216 (2008).

Regarding sufficiency, this court has held that a rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a rape conviction on appeal, even when the victim is a child. *Jeffries v. State*, 2014 Ark. 239, 4–5, 434 S.W.3d 889, 893. The credibility of the witnesses is an issue for the jury to decide and not this court. *Rounsaville*, 374 Ark. at 359, 288 S.W.3d at 216. The trier of fact is free to believe all or part of any witness's testimony and may resolve all questions of conflicting testimony and inconsistent evidence. *Id.* Unless the evidence does not meet the required

standards, leaving the jury to speculation and conjecture in reaching its verdict, the jury may choose to believe the State's account of facts rather than the defendant's. *Id.*

We now turn to the evidence presented at trial. C.T. described McKee penetrating her from behind—his middle in her middle, his private in her private—and utilized a doll for demonstration. She said it was painful. McKee's bedroom contained a blood-stained mattress and blood-stained sheets—this was the uncontroverted location where C.T. was injured. C.T. testified that McKee had watched pornographic movies while she was lying in bed with him on multiple occasions preceding the incident.

McKee told investigators he was incapable of penetrating C.T. with his penis, maintaining that her injury occurred while the two were "wrestling." McKee acknowledged that he and C.T. were naked at the time. McKee offered the theory that C.T.'s injury could have been simply a re-aggravation of an old wound.

But Dr. Clingenpeel testified that C.T.'s injury was not consistent with McKee's "old wound" theory. Dr. Clingenpeel noted that C.T. was prepubertal and that the injury was extensive. She explained that C.T.'s injury would have bled profusely, and there were signs it had already begun to heal by the time McKee brought C.T. to the doctor one week after it occurred. In Dr. Clingenpeel's opinion, the injury to C.T., who was prepubertal, involved the use of a "vaginal impalement mechanism" and was consistent with "child sexual abuse." Moreover, investigators found a sex toy at McKee's residence with C.T.'s DNA on it.

Here, there is substantial evidence to support the jury's verdict. Any inconsistencies were for the jury to resolve. A reasonable jury could have found that McKee penetrated C.T.'s

7

vagina with either his penis or with the sex toy when she was less than fourteen years old, and that the penetration was for McKee's sexual gratification. We affirm the circuit court's decision on this point.

III. *Rape Shield*

McKee appeals the circuit court's denial of his motion to include evidence otherwise excludable by Ark. Code Ann. § 16-42-101, the "rape shield" statute.

Under the rape-shield statute, the prior sexual conduct of a victim is not admissible by the defendant "to attack the credibility of the witness, to prove consent or any other defense, or for any other purpose." Ark. Code Ann. § 16-42-101(b) (Supp. 2019). The statute does have a mechanism through which the circuit court may consider whether normally excluded evidence is admissible. This requires the circuit court to hold an in camera hearing to determine whether such evidence would be relevant to a fact at issue and whether the probative value outweighs its inflammatory or prejudicial nature. Ark. Code Ann. § 16-42-101(c) (Supp. 2019). The purpose of the statute "is to shield victims of sexual abuse or rape from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is not relevant to the defendant's guilt." *Woodall v. State*, 2011 Ark. 22, at 4, 376 S.W.3d 408, 411. The circuit court has discretion to determine whether such evidence is relevant and will not be reversed unless the decision constitutes clear error or a manifest abuse of discretion. *Id.*

In *State v. Townsend*, 366 Ark. 152, 158, 233 S.W.3d 680, 685 (2006), this court embraced a five-factor test to consider whether the prior sexual conduct of a child is

admissible to prove an alternate source of the child's sexual knowledge. The *Townsend* factors are "(1) that the prior act clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; (5) that the probative value of the evidence outweighs its prejudicial effect." *Id.* at 158, 233 S.W.3d at 685. The *Townsend* factors also have been applied to determine whether prior sexual conduct can be introduced to show another source of injury to a child. *Woodall*, 2011 Ark. 22, at 5–6, 376 S.W.3d at 411–12; *see also Joyner v. State*, 2009 Ark. 168, at 5–6, 303 S.W.3d 54, 57.

At this point, some additional discussion about the procedural history of the rape-shield issue in this case is necessary. With respect to the parties and the circuit court, the record from which we must assess this question could have been better.

Before trial, various medical records concerning the treatment of C.T.'s injuries were turned over to the defense through discovery. McKee filed a motion seeking to introduce evidence otherwise excludable under Ark. Code Ann. § 16-42-101. At the pretrial hearing on McKee's motion, McKee explained, "In the medical records that the doctors have provided to the State and the State had provided us through discovery, they've made a specific reference to the fact that there were preexisting injuries." McKee's motion stated that there were two other men who had abused C.T. in the past—one who had "touch[ed] the vagina of the then five year old victim," and one who had been sentenced for second-degree

9

sexual assault[1] on April 22, 2019. "What I want to be able to do, your Honor, is to be able to question the physician and be able to question the physician about whether or not there were prior injuries to the victim's vaginal area. That it wasn't—that it was possible it reaggravated an existing injury[,]" McKee said.

However, no evidence was ever introduced at the hearing. It appears that the medical records were not on hand at the beginning of the hearing, though the parties did describe the evidence and discuss the *Townsend* analysis with the court. With specific regard to the medical records, the following exchange occurred:

THE COURT:      All right. Do I understand that you need to inquire about prior sexual injury to this victim in order to say that her current injuries occurred while wrestling, and they would not have occurred but for the prior injury?

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT:      That it was an accident and it only happened because this victim was previously a victim of a sexual offense and had injuries?

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT:      And do you have any evidence to support that position? Any medical evidence?

DEFENSE COUNSEL: The medical records the State has provided that such injuries did occur.

---

[1]Penetration is not an element of second-degree sexual assault. Ark. Code Ann. § 5-14-125.

THE COURT:                Well, but do you have anything that is probative on this specific issue that those prior injuries could in fact have played a role in this later accidental activity?

DEFENSE COUNSEL: No, your honor.

There was some additional discussion concerning the admissibility and probative value of other documents related to the prior sexual contact by the other two men. The circuit court ruled that CACD reports concerning the prior acts by the other two men were inadmissible hearsay. The circuit court opined that a no-contact order between C.T. and one of the men might not be hearsay, but because the no-contact order did not clearly indicate whether a prior act occurred, McKee still had not satisfied the first factor of the *Townsend* analysis. The medical records were never introduced at the pretrial hearing.

Ultimately, the circuit court denied McKee's motion for lack of proof presented on the first *Townsend* factor. In its subsequently entered order, the circuit court stated, "The Defendant shall not be permitted to ask the victim or any lay witnesses in the case about any matters relating to prior sexual contact of the victim, C.T." Before the conclusion of the hearing, the prosecution asked the circuit court whether the references to past incidents of abuse should be redacted from the medical records before trial, and the circuit court stated that was consistent with her ruling.

However, at trial, there was a stipulated exhibit entered into evidence containing the medical records. Then, near the beginning of Dr. Clingenpeel's cross-examination, McKee's trial attorney asked Dr. Clingenpeel to read an excerpt from the medical records. Dr.

Clingenpeel stated that the medical record she was being shown was not one of her own. The following exchange then occurred:

> Q: Okay. Can you read the highlighted parts?
>
> A: It says, "(C.T.) has a tear extending from the hymen down to the anal folds, not quite into the rectum. It is "V" shaped. The opening of the hymen is from five to seven o'clock. There is *granulation tissue* visible beneath the fresh tear indicating there has been *previous trauma* in this area. Cannot visualize into the vaginal vault."

(Emphasis added.) The prosecution then asked that the parties approach the bench, a request which the circuit court granted. The circuit court then discussed the situation with the parties outside the presence of the jury. Apparently, there were at least some references to prior injury contained in the medical records that were already in evidence as a stipulated exhibit and that were left unredacted. After some discussion, the circuit court stated that McKee was proposing to ask questions about an exhibit that had already been introduced into evidence by stipulation of both parties; the court then allowed the course of questioning to continue. When Dr. Clingenpeel's cross-examination continued, the following exchange occurred:

> Q: Doctor, I'm handing you a page of the medical records. Can you read the highlighted portion?
>
> A: I believe—so I have to clarify this is not my medical record. This is not anything that I documented.
>
> Q: Okay.
>
> A: But so, "Eleven-year-old-female with *significant injury to the perineum following sexual assault*."

(Emphasis added.) The court asked the parties to return to the bench where they discussed the extent to which Dr. Clingenpeel should testify about medical records her team did not create, but the circuit court allowed the line of questioning to continue. McKee apparently never asked the circuit court to reconsider its pretrial decision on his rape-shield motion. After the cross-examination resumed, however, McKee was eventually able to confront Dr. Clingenpeel with the proposition that the injury C.T. complained of was actually a re-aggravation of an older injury:

> Q: Okay. And the medical records also show that the perineal laceration *was in fact a fresh injury over an older injury*.
>
> A: No. That's incorrect.
>
> Q: How so?
>
> A: So there are some notes in the medical record by some providers that reference there being an older injury, but what they are referring to is the granulation tissue that I described where this injury had started healing. So there was no diagnosis of a prior injury with an acute injury.
>
> Q: Is that what it says in [the medical records]?
>
> A: (No audible response).
>
> Q: Doctor, I'm—well, going back to page 80 what you read to the jury, it says "there's evidence of old injury underlying the fresh injury."
>
> A: So this note, as I said, is not my note. This is something written probably by a resident in the emergency room. So the assessment of my team is the definitive assessment of a sexual assault patient. And if there is any difference between those records, the assessment of my team is the definitive diagnosis.

(Emphasis added.) This marked the conclusion of Dr. Clingenpeel's testimony.

Given the specific facts of this case, we hold that the circuit court committed no reversible error in denying McKee's rape-shield motion. First, when the circuit court was ruling on McKee's motion at the pretrial hearing, there had been no evidence presented to show that a prior act, whatever it would have been, ever occurred. We are mindful of appellant's contention that the circuit court cut him off before he could present the relevant medical records and that there was an undisputed representation that the records contained references to a prior injury of some form. However, the parties had apprised the court that the injuries for which McKee was charged were some of the worst that examiners had ever seen and were characterized as "severe vaginal penetration." McKee had acknowledged there was no indication that either of the alleged prior instances involved penetration of any form. And by the time the circuit court ruled that McKee had failed to satisfy the first *Townsend* factor for lack of proof, McKee had already conceded that there was no evidence that the alleged prior injuries could have played a role in the allegedly accidental conduct at issue in this case. In this situation, we cannot say that the circuit court abused its discretion in denying McKee's motion at the pretrial hearing for lack of proof on the first *Townsend* factor.[2] Furthermore, it appears the evidence came in at trial anyway. Though he never asked the circuit court to reconsider its denial of his rape-shield motion, McKee was permitted to question Dr. Clingenpeel in detail about the "old injury" theory, making extensive use of

_____

[2]Again, the transcript from the pretrial hearing is not always clear, but at one point, the circuit court asked McKee's attorney, "I don't have from you, [defense attorney], any evidence that a prior act clearly occurred," to which McKee's attorney responded, "Correct."

14

the same medical excerpts that were the subject of the pretrial hearing. The jury heard the evidence but nonetheless disagreed with the defense's wrestling-accident theory. Accordingly, any alleged error was harmless, and we affirm.

## IV. *Hearsay*

Next, McKee contends that the trial court erred in sustaining a hearsay objection. As the State points out, it is not clear which ruling or statement McKee is referring to here. The record pages cited at this point in McKee's brief concern an alleged prior injury to the victim's vaginal area. To the extent this is the statement McKee is referring to, this alleged injury was discussed at trial through Dr. Clingenpeel's testimony and the references to the medical records, *supra* at 11–12. Accordingly, any alleged error was harmless, and we affirm for the same reasons stated above. To the extent McKee is making a different point, it is not this court's job to develop an appellant's argument on appeal. *Flanagan v. State*, 368 Ark. 143, 167–68, 243 S.W.3d 866, 883 (2006).

## V. *Motion to Suppress*

Next, McKee argues that the circuit court erred in denying his motion to suppress evidence, which sought to exclude from evidence the video of his arrest. Specifically, McKee argues that it was erroneous for the circuit court to deny his motion to suppress without requiring the State to put on evidence. He cites *Evans v. State* for the proposition that once a motion to suppress is filed, the burden shifts to the State to prove that the search was legal. *See Evans*, 65 Ark. App. 232, 239, 987 S.W.2d 741, 745 (1999) ("The State has not met its burden of justifying Trooper Adams's warrantless search of the appellant's purse.").

It is true that a warrantless search is presumptively unreasonable, and that the burden is on the State to prove that the warrantless activity was reasonable. *See, e.g., Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). The same is true of a statement taken from a defendant while he is in police custody. *See, e.g., Jackson v. State*, 2013 Ark. 201, 427 S.W.3d 607. However, neither in McKee's motion to suppress nor at the hearing on said motion did McKee ever apprise the circuit court that the video was obtained without a warrant or attempt to argue that he was in custody when the video was taken.[3] Instead, the parties argued about the video's relevancy for purposes of showing McKee's consciousness of guilt, with McKee maintaining that the video should be excluded "just strictly on a balancing test." McKee made an evidentiary argument pursuant to Arkansas Rule of Evidence 403 for which the movant bears the burden of proof. *Chunestudy v. State*, 2012 Ark. 222, at 6, 408 S.W.3d 55, 60.

At the conclusion of the hearing on McKee's motion, the circuit court stated: "All right. As to the motion to suppress the video tape and the 403 argument and the State's consciousness of guilt argument and the supporting information, the Court denies the motion." There was never any mention of a warrant (or lack thereof) or whether McKee's rights pursuant to the Fourth, Fifth, and Sixth Amendments were implicated. McKee

---

[3]At one point, the circuit court asked McKee's attorney whether he was attempting to suppress an involuntary statement, to which McKee's attorney responded, "No, Judge." At another point, McKee's attorney told the circuit court, "The motion to suppress is our burden." Again however, the record is unclear, and it may be that McKee's attorney was commenting on different issues.

certainly didn't argue that the circuit court was denying his motion without holding the State to its proper burden of proof. It is well settled that a party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal. *See, e.g., Stewart v. State*, 2012 Ark. 349, at 8, 423 S.W.3d 69, 74. Accordingly, we do not address this argument.

## VI. *Prior Statement*

Next, McKee appeals the circuit court's denial of his motion to allow a prior statement into the record, specifically C.T.'s statement to investigators that McKee was the first person to put his privates in her privates. This was an additional part of McKee's rape-shield motion: McKee argued that the prior statement should be admissible to show an alternative source of the victim's sexual knowledge or injury pursuant to the *Townsend* factors, and to impeach the victim's credibility. As discussed *supra* at 10–11, the circuit court's denial of McKee's rape-shield motion for failure of proof on the first *Townsend* factor was not an abuse of discretion. Considering there was no indication that either of the alleged prior instances involved penetration, it is unclear how C.T.'s statement would supply an impeaching effect in the first place. In other words, McKee never established the statement's independent relevance or admissibility pursuant to Ark. Code Ann. § 16-42-101(c). Finally, McKee's attorney *did* ask C.T. on cross-examination if this was the only time that she had gotten hurt. She said yes. We find no error by the circuit court.

## VII. *Leading*

17

Next, McKee appeals the circuit court's decision to allow the prosecutor to ask the victim leading questions. However, this court has held that leading questions by the prosecution to a child victim in a rape case on direct examination are permissible within the sound discretion of the trial court. *Jackson v. State*, 290 Ark. 375, 720 S.W.2d 282 (1986). At trial, McKee objected to a specific instance when C.T. was holding the doll, and the prosecutor was leading C.T. to elicit her verbal acknowledgement that McKee had pulled her panties down ("So he pulled your panties down, right?"). McKee raised this objection pursuant to his belief that the prosecutor was essentially directing or encouraging C.T. to pull down the panties on the doll and endorse the prosecutor's statement before she had in any way indicated that would be part of her testimony. At the resulting bench conference, however, the circuit court explained that the prosecutor was copying C.T., not the other way around ("When he said pulling the panties down, she was already doing that."), and overruled McKee's objection. McKee's attorney acknowledged that it had been hard to see from his vantage point. McKee's attorney nonetheless maintained that the prosecution's questioning up until that point had been particularly directive, and the circuit court did ask the prosecutor to avoid leading as much as possible. When C.T.'s direct examination continued, the prosecutor's questioning was far more objective, and McKee raised no further objection. We find no error.

## VII. *4-3(i) Review*

After this case was decided, it was noted that the court reporter did not transcribe the jury-selection proceedings to be included in the record. Rule 3-4(b)(1) of the Rules of the

18

Supreme Court and Court of Appeals of Arkansas provides that jury-selection proceedings should not be included in the record "unless expressly called for by a party's designation of record." However, McKee was convicted of rape and sentenced to life in prison. "When the sentence is death or life imprisonment, the Court must review all errors prejudicial to the appellant[.]" *Id.* R. 4-3(i). This court has reviewed the record on appeal, and no such prejudicial error has been found, but there is no indication in the record whether there were any rulings adverse to McKee during jury-selection proceedings. In *Ellis v. State*, this court assessed a similar situation:

> In compliance with [this court's rules], the record has been examined for all objections, motions, and requests made by either party that were decided adversely to the appellant, and no prejudicial error has been found. We do note that, per Ellis's request in his notice of appeal, the record does not contain a transcript of general and individual voir dire. While we believe the better approach would be to provide this court with a complete record when a term of life imprisonment is imposed, *see O'Neal v. State*, 356 Ark. 674, 158 S.W.3d 175 (2004), pursuant to Ark. Sup.Ct. R. 3-4(b), the impaneling or swearing of the jury, the names of the jurors, or any motion, affidavit, order, or ruling in reference thereto is not transcribed unless expressly called for by a party's designation of the record. Because Ellis excluded general and individual voir dire from his notice of appeal and, thus, those matters were not transcribed, we are left to assume that there were no adverse rulings.

366 Ark. 46, 49–50, 233 S.W.3d 606, 609 (2006).

Here, McKee's notice of appeal designated "the entire record and all proceedings, exhibits, evidence, and testimony, including any and all pretrial hearings, whether or not motions were argued, testimony, arguments, any proffered testimony or exhibits from the trial which ended as of September 11, 2019[.]" He later filed with this court a brief containing six separate arguments for reversal, as set forth above. McKee was represented by the same

attorney at trial and on appeal. At no point has McKee's attorney sought to supplement the record with a transcript of the jury-selection proceedings, nor has he alleged error or indicated there were any adverse rulings during those proceedings. Based upon the level of detail contained in the filings by McKee's counsel, it does not appear that the failure to add a transcription of the jury-selection proceedings was inadvertent. In this specific situation, we find applicable this court's holding in *Ellis*, and affirm.

Affirmed.

*James Scurlock*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.