Cite as 2021 Ark. App. 56

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-19-671

| | |
|---|---|
| RYAN JAMES KIRKLAND<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** February 10, 2021<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CR-15-1231]<br><br>HONORABLE JOANNA TAYLOR, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

This case originally appeared before this court as a no-merit appeal. We ordered rebriefing due to deficiencies. *Kirkland v. State*, 2020 Ark. App. 348, 604 S.W.3d 614. The case has been returned to us as a merit appeal challenging the sufficiency of the evidence. In January 2019, a Washington County jury convicted appellant Ryan James Kirkland of three counts of rape and two counts of second-degree sexual assault involving his long-term, live-in girlfriend's daughter, A.D. Kirkland was sentenced to an aggregate term of ninety years' imprisonment. On appeal, he argues that the trial court erred in denying his directed-verdict motion because the victim was not believable and because the nurse expert's testimony should have been disregarded. We affirm.

## I. *Standard of Review*

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *King v. State*, 2018 Ark. App. 572, 564 S.W.3d 563. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428.

A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is a minor and the actor is the victim's guardian. Ark. Code Ann. § 5-14-103(a)(4)(A)(i) (Supp. 2019). "Sexual intercourse" means penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(12). "Deviate sexual activity" means any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person; or the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 5-14-101(1)(A), (B).

A person commits sexual assault in the second degree if the person engages in sexual contact with a minor and the actor is the minor's guardian, a temporary caretaker, or a person in a position of trust or authority over the minor. Ark. Code Ann. § 5-14-125(a)(4)(A)(iv). Second-degree sexual assault may also be committed if the person, being eighteen years of age or older, engages in sexual contact with another person who is less

than fourteen years of age and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3). "Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(11).

## II. *Trial Testimony*

Considering only the evidence that supports the verdict, the testimony revealed that on the night of May 6, 2015, A.D. ran away from the home she shared with her mother, Kirkland, and her younger brother. She went to the home of neighbors where she told them that Kirkland was chasing her, that she was afraid of him, and that he had been inappropriate with her. The neighbors called the police.

At the time of trial in January 2019, A.D. was twenty years old. She testified that from the time she was eight years old until she was sixteen, Kirkland, whom she referred to as her "stepdad," raped and sexually abused her. She said that Kirkland began by cuddling with her at night and touching her breasts and vagina. A.D. stated that the abuse progressed from touching to oral sex, digital penetration, and attempted penile penetration of her vagina. Admitted into evidence was a drawing by A.D. of Kirkland's penis with distinguishing marks. Later, a detective testified that he saw those distinguishing marks on Kirkland's penis when he took a photo with Kirkland's permission.

Sue Stockton, a sexual-assault nurse examiner who performed an exam on A.D., testified that a deep notch on A.D.'s hymen could be consistent with penetration. Lisa Channell, chief criminalist at the Arkansas State Crime Laboratory, testified that she found sperm cells on a cutting from the comforter on A.D.'s bed. Jennifer Beaty, a DNA analyst,

3

testified that the comforter contained DNA consistent with Kirkland's. Detective Leonard Graves interviewed Kirkland, who denied A.D.'s allegations, described himself as her "dad," and claimed that A.D. was angry about being disciplined. Other witnesses testified for the State, including neighbors, A.D.'s mother, A.D.'s past and present friends from school, and a forensic examiner who had interviewed A.D.

Defense counsel moved for a directed verdict at the close of the State's case and at the close of all of the evidence challenging several elements of the offenses, including sexual contact, deviate sexual activity, sexual intercourse, and Kirkland's status as A.D.'s guardian. The trial court denied Kirkland's motion and denied the renewed motion. The jury found him guilty on all counts.

III. *Discussion*

Kirkland argues that the weight of the inconsistent and uncorroborated testimony, together with the plausible alternative motive for the victim's complaints, makes the testimony inherently improbable for reasonable minds. Kirkland points to the following: The neighbors who took in A.D. the night she ran away did not recall any mention of sexual abuse; the victim's mother, who lived in the small house with Kirkland and A.D., did not have any knowledge of the abuse; A.D. admitted that she had lied about other things; A.D. gave "shifting and inconsistent stories" to the forensic examiner and a detective, and she failed to mention certain details; the scientific evidence was equivocal and scant in that the crime–lab witnesses described finding only a few sperm cells from only one cutting of fabric; and Kirkland, inconsistent with guilt, provided a statement to police, consented to a search, and volunteered his DNA.

4

Kirkland describes the trial as "a swearing match" with credibility of the utmost importance. Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008). Here, the jury must have believed A.D.'s testimony. We find nothing inherently improbable in her testimony such that the jury could not convict Kirkland of rape and sexual assault.

Arkansas appellate courts have "continually held that a rape victim's testimony alone is sufficient and is substantial evidence to support a rape conviction." *Clayton v. State*, 2012 Ark. App. 199, at 4–5. The same is true for second-degree sexual assault. *Savage v. State*, 2013 Ark. App. 133. A.D. testified to specific acts that fall within the definitions of sexual contact, deviate sexual activity, and sexual intercourse. Although A.D. may have been angry about being disciplined or, specifically, having her phone taken away by Kirkland, the jury could nevertheless find her credible regarding what happened to her over a period of years.

Next, Kirkland argues that Stockton's testimony should have been disregarded because she referred to anal penetration when there had been no mention of this by A.D. and because Stockton had said that she commonly relies on histories provided to others that are often wrong. Kirkland objected during Stockton's testimony, and the trial court gave a curative instruction to the jury and allowed vigorous cross-examination of the expert. Kirkland nevertheless argues on appeal that the damage had been done and that Stockton's testimony should have been given no weight whatsoever. We do not know what weight

the jury may have given Stockton's testimony. Stockton's testimony, however, was not determinative of guilt given that A.D.'s testimony amounts to substantial evidence to support Kirkland's convictions.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.