Cite as 2025 Ark. App. 78

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-399

| | |
|---|---|
| SAMUEL GLADDEN<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 12, 2025<br><br>APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT<br>[NO. 32CR-22-126]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant Samuel Gladden ("Gladden") appeals his second-degree sexual-assault conviction by an Independence County jury and resulting sixteen-year sentence. Gladden maintains on appeal that the circuit court erred by denying his motion for directed verdict because the State failed to set forth sufficient evidence that he engaged in sexual contact with the minor child ("MC") or that he was in a position of trust or authority over MC. He also makes several evidentiary arguments that he contends require reversal of his conviction. We affirm.

### I. *Background Facts*

On October 9, 2021, Gladden and his wife, Beth Gladden ("Beth"), hosted a birthday party at their home for two of their daughter's friends and a sleepover with eleven teenagers. In attendance at the Gladdens' house was Gladden, Beth, MC, Gladden's biological minor

son, and seven other minor girls. Gladden and Beth provided alcohol for the party and stayed up partying and drinking with the minors.

MC testified that she fell asleep around 1:30 a.m. on the couch in the downstairs living room, which was right next to the Gladden's bedroom. MC was sixteen years old at the time. MC testified that she woke up at approximately 4:00 a.m. to Gladden's kissing first her neck then her mouth. Gladden pulled MC's pants down and inserted his fingers into her vagina. He then performed oral sex on MC. MC testified that she knew it was Gladden who sexually assaulted her because she felt his goatee, and Gladden was the only man at the house with facial hair. MC also recognized Gladden's voice when he said her name and stated, "You don't know how bad I want you." After the assault, MC fell back asleep. When MC woke up a few hours later, she disclosed the incident to her boyfriend over the phone—while she was still at the Gladdens' home—and some of the minor girls who attended the sleepover. MC also told Beth.

MC underwent a medical examination that day and a criminal investigation began. During the examination, MC explained that her vaginal area was sore, painful, and felt like "little paper cuts" inside her vagina. The medical examination revealed that MC had "acute" injuries that had occurred within the past twenty-four to forty-eight hours; there were abnormal findings to MC's labia majora and clitoris; and she had a contusion on her clitoral hood that the nurse who performed the exam explained means "blunt-force trauma."

Additionally, the Arkansas State Crime Laboratory tested the swabs and clothing taken from MC during the medical examination. The forensic analyst testified that the DNA

found on the swab from MC's neck matched Gladden's DNA profile. The DNA on MC's vaginal swab and tape lift from her underwear was consistent with Gladden's and any of his paternal relatives' DNA. On August 2, 2022, Gladden was charged with second-degree sexual assault pursuant to Arkansas Code Annotated section 5-14-125(a)(4)(A)(iv) (Supp. 2021), knowingly furnishing alcohol to a minor, and contributing to the delinquency of a minor. Beth was also charged with—and convicted of—knowingly furnishing alcohol to a minor and contributing to the delinquency of a minor.

At a pretrial hearing on the eve of trial, Gladden requested a continuance. Defense counsel argued that he needed additional time to hire an expert to review MC's supplemental medical records. The medical records in question were received by the State on Thursday, January 4, and electronically sent to Gladden on January 5. The medical records contained documents from MC's follow-up medical examination a month after the sexual assault and the laboratory results from testing completed during MC's initial medical examination. The circuit court denied Gladden's request for a continuance and, instead, excluded the supplemental medical records due to their late disclosure.

After a short recess, Gladden declared that he reviewed the supplemental medical records and wanted to use the portion of the documents showing that MC had tested positive for chlamydia. He also requested additional time so that Gladden could get tested for chlamydia and to determine whether MC's sexually transmitted infection could provide an alternative theory for the redness, swelling, and pain in MC's vagina. The circuit court held

that the parties were to "stay away from any reference to chlamydia" but allowed Gladden to file a motion for continuance.

In the motion, Gladden reiterated that a continuance was necessary so that he could get tested for chlamydia and also argued that the medical records showing that MC tested positive for chlamydia should not be excluded under the rape-shield statute because it was relevant to provide an alternative explanation for MC's vaginal redness and inflammation. On the morning of trial, Gladden presented his motion, and after hearing arguments from both sides, the circuit court held that any evidence that MC tested positive for chlamydia was more prejudicial than probative; therefore, it excluded the evidence. Trial commenced after the circuit court made this ruling.

After the State rested its case, Gladden moved for a directed verdict on the second-degree sexual-assault charge. He argued that the State failed to meet its burden of proof because MC never made a positive identification of Gladden. The circuit court denied the motion. After the defense rested, Gladden renewed his motion for a directed verdict, adding that the State failed to prove "sexual contact" or that he was a "guardian of [MC] during that time." Once again, the circuit court denied the motion.

The jury convicted Gladden of second-degree sexual assault, knowingly furnishing alcohol to a minor, and contributing to the delinquency of a minor. As a result, Gladden was sentenced to sixteen years' imprisonment and a $15,000 fine. The sentencing order was entered on January 17, 2024, and Gladden filed a timely notice of appeal on February 16. This appeal followed.

## II. *Standard of Review*

On appeal, this court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Price v. State*, 2010 Ark. App. 111, 377 S.W.3d 324. We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The duty of resolving conflicting testimony and determining the credibility of witnesses is left to the discretion of the jury. *Kelley v. State*, 375 Ark. 483, 292 S.W.3d 297 (2009).

Furthermore, appellate courts review the admission of evidence by the circuit court using an abuse-of-discretion standard. *Ventry v. State*, 2021 Ark. 96, 622 S.W.3d 630. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and this court will not reverse a court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Id.* Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but also requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*

## III. *Points on Appeal*

Gladden argues that his second-degree sexual-assault conviction should be reversed because (1) there is insufficient evidence that he engaged in sexual contact with MC; (2) there

5

is insufficient evidence that he was MC's caregiver or in a position of trust and/or authority over her; (3) the circuit court erred by excluding evidence that MC had chlamydia; (4) the circuit court abused its discretion by admitting MC's hearsay statements to her boyfriend the morning after the assault; (5) the circuit court abused its discretion by allowing the State to question Beth regarding Gladden's prior misdemeanor conviction; (6) the circuit court erred by allowing the State to call Beth as a witness at the Gladdens' jury trial; and (7) the circuit court abused its discretion by denying Gladden's motion for continuance after the State's late disclosure of new evidence.

IV. *Discussion*

A. Sufficiency of Evidence

Preservation of Gladden's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *See Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984). Gladden contends that the circuit court erred in denying his motions for directed verdict because there was insufficient evidence that he engaged in sexual contact with MC or that he was a temporary caretaker or otherwise in a position of trust or authority over MC. Specifically, Gladden argues that there was insufficient circumstantial evidence proving his identity as the perpetrator.

Gladden includes several subpoints in support of this argument for reversal: (1) the State's proof did not exclude every other reasonable hypothesis, particularly that Gladden's son and/or multiple other teenagers committed the sexual assault; (2) the DNA evidence failed to exclude every other reasonable hypothesis; and (3) the State cited case law that does

6

not exist when it argued against Gladden's directed-verdict motions. In response, the State contends that Gladden's arguments—other than his argument regarding identification—are not preserved for review because Gladden did not raise them below. We agree with the State.

In Gladden's directed-verdict motion after the State rested, he argued that the court should grant the motion for two reasons: (1) because there had been no evidence that the incident happened in Independence County, Arkansas, and (2) because MC never made a positive identification of Gladden. After Gladden rested his case, defense counsel renewed the motion for directed verdict—on the same basis—and added that the State failed to prove that Gladden had sexual contact with MC or that he was her guardian during the time in question. On appeal, however, Gladden has extended his insufficiency arguments well beyond his arguments at trial. Gladden never argued before the circuit court that his son or someone else in the residence could have committed the sexual assault, nor did he argue that the DNA evidence failed to exclude every other reasonable hypothesis. Accordingly, those arguments are not preserved for this court's review because a party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal. *See Davis v. State*, 2022 Ark. App. 510, 657 S.W.3d 207.

Furthermore, Gladden did not properly preserve his argument regarding the temporary-caretaker element of second-degree sexual assault because he did not raise this argument in his directed-verdict motion at the close of the State's case-in-chief. Rather, Gladden made this argument for the first time after the defense rested; thus, he waived this argument for the purposes of appellate review.

We now turn to the only insufficiency argument that Gladden preserved for our review: that the State failed to set forth sufficient evidence identifying Gladden as the perpetrator. Specifically, Gladden maintains that MC never affirmatively identified him; thus, the jury had to resort to speculation and conjecture to find the evidence sufficient to prove his identity as the perpetrator. We disagree.

A person commits sexual assault in the second degree if the person engages in sexual contact with a minor and the actor is a temporary caretaker or a person in a position of trust or authority over the minor. Ark. Code Ann. § 5-14-125(a)(4)(A)(iv). It is well established that a sexual-assault victim's testimony may constitute substantial evidence to sustain a conviction for sexual assault. *See Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). The victim's testimony need not be corroborated, and the victim's testimony alone describing the sexual contact is enough for a conviction. *See Scaggs v. State*, 2020 Ark. App. 142, 596 S.W.3d 562. Moreover, the credibility of witnesses is a matter for the jury's consideration. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Where the testimony is conflicting, this court does not pass upon the credibility of the witnesses and has no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Kirkland v. State*, 2021 Ark. App. 56, 618 S.W.3d 167 (citing *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008)). Furthermore, the jury is free to believe all or part of a victim's testimony as it sees fit. *See Baker v. State*, 2021 Ark. App. 117, 628 S.W.3d 462.

Here, MC testified that she fell asleep on Gladden's couch, and around 4:00 a.m., she woke to Gladden's kissing her neck and mouth. MC said that she knew it was Gladden because she "felt his goatee." She also recognized his voice when he said her name and stated, "You don't know how bad I want you." Gladden then pulled MC's pants down to her knees, put his fingers inside her vagina, and performed oral sex on her. MC testified that she was on her period during the assault and Gladden ended up lodging the tampon she was wearing further up her vaginal canal, and she had a hard time removing it the next day.

On appeal, Gladden argues that MC never affirmatively identified him as the person who assaulted her. Specifically, Gladden asserts that MC never saw his face; that MC testified her eyes were closed during the assault; that MC stated she pretended to be asleep during some of the assault; and that MC testified she could not see what clothing the perpetrator was wearing. Furthermore, Gladden points to the fact that MC had been drinking at the party and contends MC was "only able to guess" that it was Gladden who sexually assaulted her as opposed to someone else. Essentially, Gladden is asking this court to assign less weight to MC's testimony for the reasons set forth above; however, this court does not reweigh the evidence or make credibility determinations. Here, that was a job for the jury, who was free to believe all or a portion of MC's testimony. *See Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428. The jury was also instructed to use common knowledge and its own observations and experiences in the affairs of life in considering the evidence. Accordingly, in viewing the evidence in the light most favorable to the State, we find that the circuit court did not err in denying Gladden's motions for directed verdict.

9

## B. Evidentiary Arguments

### 1. *Rape-shield statute*

Gladden maintains that the circuit court erred by excluding evidence under the rape-shield statute that MC tested positive for chlamydia. Specifically, Gladden argues that the evidence is relevant because "it provided an alternate explanation for the redness, burning, swelling, and pain in [MC's] vagina," and there was no evidence that he was ever diagnosed with the same infection.

The rape-shield statute provides that evidence of specific instances of a victim's prior sexual conduct with any person is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim or for any other purpose. Ark. Code Ann. § 16-42-101(b) (Supp. 2023). However, when the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature, an exception is granted. Ark. Code Ann. § 16-42-101(c). The purpose of the statute is to shield victims of rape or sexual abuse from the humiliation of having their sexual conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Vance v. State*, 2011 Ark. 392, 384 S.W.3d 515. The circuit court is vested with discretion to determine whether such evidence is relevant and will not be reversed unless the decision constitutes clear error or a manifest abuse of discretion. *McKee v. State*, 2020 Ark. 327, 608 S.W.3d 584.

In *State v. Townsend*, 366 Ark. 152, 233 S.W.3d 680 (2006), our supreme court embraced a five-factor test to consider whether the prior sexual conduct of a child is admissible to prove an alternate source of the child's sexual knowledge. The *Townsend* factors are (1) that the prior act clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect. *Id.* These factors have also been applied to determine whether prior sexual conduct can be introduced to show another source of injury to a child. *See McKee, supra.*

Gladden did not argue the *Townsend* factors at trial or on appeal; however, the circuit court ruled that any "reference to [MC's] chlamydia [was] much more prejudicial than probative." Gladden offered no evidence that the swelling and redness in MC's vaginal area could have been caused by chlamydia, he merely asserts that it was possible. MC also had other injuries to her vaginal area that were consistent with blunt-force trauma and lacerations inside her vagina caused by "penetrative trauma." Therefore, we hold that the circuit court's exclusion of the evidence did not constitute clear error or a manifest abuse of discretion.

### 2. *Hearsay*

Next, Gladden asserts that the circuit court abused its discretion by admitting MC's statements to her boyfriend the morning after the assault. Specifically, Gladden argues that (1) MC's statements to her boyfriend do not fall under the excited-utterance exception to hearsay pursuant Arkansas Rule of Evidence 803(2) (2024); (2) the statements were

11

inadmissible as "prior consistent statements" under Arkansas Rule of Evidence 801(d)(1); and (3) he suffered "massive" prejudice from the court's admission of the boyfriend's testimony because it bolstered MC's credibility. At trial, Gladden objected to the boyfriend's testimony regarding what MC told him about the assault, arguing that because the statement was made hours after the assault, it did not qualify as an excited utterance. The circuit court overruled the objection and held that the testimony qualified as an excited utterance.

This court will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Beard v. State*, 2020 Ark. 62, 594 S.W.3d 29. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the court acted improvidently, thoughtlessly, or without due consideration. *Cherry v. State*, 2024 Ark. App. 249, 688 S.W.3d 164. Moreover, an appellate court will not reverse a circuit court's evidentiary ruling absent a showing of prejudice. *Id.*

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c) (2023). Arkansas Rule of Evidence 803(2) (2023) provides that an excited utterance is not excluded by the hearsay rule, even though the declarant is available as a witness, and an excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. This court has observed that sexual abuse is a startling event within the meaning of Rule 803(2). *See Frye*

*v. State*, 2009 Ark. 110, 313 S.W.3d 10; *Killcrease v. State*, 310 Ark. 392, 836 S.W.2d 380 (1992).

The relevant inquiry is whether the statement was made under the stress of excitement or was made after the declarant calmed down and had an opportunity to reflect, which is a matter within the circuit court's sound discretion. *Lester v. State*, 2024 Ark. App. 206, 687 S.W.3d 344. Admissibility is not to be measured by any precise number of minutes, hours, or days but requires that the declarant is still under the stress and excitement caused by the event. *Ludwick v. State*, 2021 Ark. App. 347, 635 S.W.3d 330. Continuing emotional or physical shock, unabated fear, and other factors may also prolong the time, making it proper to resort to Rule 803(2). *See Evans v. State*, 2024 Ark. App. 368, 690 S.W.3d 871. The trend in the law is toward relaxing the time element. *Id.*

Here, shortly after she woke up, MC disclosed to her boyfriend--over the phone—that she had been sexually assaulted. The boyfriend testified that MC was crying and sounded "panic[ked] and stress[ed]." According to precedent, Gladden's argument that the statement was not an excited utterance simply because of the hours that had elapsed between the assault and MC's phone call with her boyfriend lacks merit. Because the boyfriend testified that MC was stressed and sounded panicked, we hold that the circuit court did not abuse its discretion by allowing MC's boyfriend to testify regarding the statements MC made to him a few hours after the assault. Finally, because Gladden failed to object at trial to the boyfriend's testimony as a prior consistent statement under Rule 801(d)(1), the argument is not preserved for this court's review.

Furthermore, Gladden cannot demonstrate prejudice from the boyfriend's testimony because it was merely cumulative of other evidence that was admitted without objection. *See Graham v. State*, 2022 Ark. App. 502, 655 S.W.3d 918. Defense counsel elicited the same testimony from the boyfriend on cross-examination, asking whether MC used the word "sexual assault." The boyfriend explained that MC said she was "sexually assaulted" over the phone but over text messaging she used the word "rape." Furthermore, Beth testified without objection that her daughter woke her up by saying, "[MC] is accusing [Gladden] of molesting her," and another witness testified, without objection, that MC told him that Gladden had raped her. Thus, no prejudice could be established with the admission of the testimony.

### 3. *Rebuttal testimony*

Gladden argues that the circuit court abused its discretion by allowing the State to question Beth about his prior misdemeanor assault conviction. Specifically, Gladden contends that Beth's testimony regarding his prior misdemeanor conviction was not admissible to rebut his minor son's testimony that he and his friends "felt safe in [Gladden's] home around the time of the charged acts." Accordingly, Gladden asserts that Beth's testimony was inadmissible under Arkansas Rule of Evidence 404 and that it should have been excluded as unduly prejudicial. In response, the State argues that the circuit court correctly admitted the testimony about his prior conviction as rebuttal evidence, and alternatively, any error was harmless.

14

Under Arkansas Rule of Evidence 404(a)(1) (2023), evidence of a person's character or a trait of his character is not admissible for proving that he acted in conformity therewith on a particular occasion, except by the accused or by the prosecution to rebut the same. Our supreme court has recognized that when a defendant produces a character witness, the defendant opens the door to evidence that might otherwise be inadmissible. *Frye*, *supra*. Furthermore, once the door is open, the State can inquire onto a witness's knowledge of specific instances of conduct, and there is no limit, other than relevancy, on the kind of instances of misconduct with respect to which cross-examination may occur. *Wilcoxon v. State*, 2022 Ark. App. 458, 655 S.W.3d 686.

During direct examination, Gladden elicited testimony from his son that he always felt safe in his home; that Gladden never did anything to make his friends feel uncomfortable; and that his friends never made any complaints about Gladden's behavior. After defense passed the witness, the State brought to the court's attention that it believed Gladden had opened the door by introducing character evidence that his son always felt safe in his home and that his friends never felt uncomfortable around Gladden. Accordingly, the State argued it could now inquire about Gladden's prior misdemeanor assault wherein Gladden was intoxicated and assaulted his wife, and Gladden's son was present. The circuit court agreed with the State and held that Gladden opened the door for his son to be cross-examined about the prior misdemeanor assault.

Thereafter, when the defense called Beth to the stand, the State informed the court that it intended to question Beth regarding Gladden's prior misdemeanor assault. Gladden

15

objected, arguing that Beth had not provided any character testimony; thus, the door had not been opened for the State to question her about the prior assault. The State disagreed and argued that because Gladden had produced several character witnesses to demonstrate that his home was a safe place, it was allowed to call any witness to rebut that testimony. The court held that the State could not cross-examine Beth regarding the prior assault because it was outside the scope of Gladden's direct-examination; but that the State could call Beth as a rebuttal witness. On rebuttal, the State questioned Beth about an altercation in 2013 wherein Gladden struck her and grabbed her neck. In response, Beth replied that she did not remember the incident. Beth then admitted that Gladden "pled guilty for assault but it wasn't against me."

As referenced above, our appellate courts have upheld the admission of prior convictions when offered to rebut the defendant's opinion testimony. Accordingly, we do not find that the circuit court abused its discretion in ruling that Gladden opened the door for the prior misdemeanor assault to come in through cross-examination or on rebuttal. However, even if the testimony was admitted in error, it merely amounts to harmless error. Harmless error exists when the evidence of guilt is overwhelming, and the error is slight. *E.g., Lawson v. State*, 2024 Ark. 143, 697 S.W.3d 529. MC testified that it was Gladden who sexually assaulted her; the medical examination revealed that MC had bruising on her clitoral hood, redness and swelling on her vagina and labia majora, and a laceration inside her vagina that was indicative of penetrative trauma; and Gladden's DNA matched the male DNA found on MC's neck and was consistent with the male DNA found on MC's vaginal swab

16

and tape lift from her underwear. Thus, the evidence of Gladden's guilt on the charge of second-degree sexual assault was overwhelming.

### 4. *Fifth Amendment*

Gladden contends that the circuit court erred by allowing the State to call Beth as a witness in the Gladdens' jury trial. Specifically, Gladden acknowledges that he did not object when the State called Beth as a rebuttal witness; however, he argues that no objection is required to preserve an issue for appeal when the error is so flagrant and egregious that the circuit court should, on its own motion, have taken steps to remedy it. In support of his argument, Gladden cites *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), and states that Beth's Fifth Amendment right is a fundamental right that falls under an exception to the contemporaneous-objection rule as set forth therein.

In response, the State maintains that Gladden's argument must fail because (1) he does not have standing to assert that Beth's Fifth Amendment rights were violated, and (2) Beth waived her Fifth Amendment privilege when she voluntarily testified; thus, she was subject to being recalled by the State on rebuttal. We agree.

A witness's right to not incriminate himself or herself is personal, and another person does not have standing to assert a violation of the witness's Fifth Amendment rights. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). Consequently, Gladden does not have standing to assert that Beth's right to not incriminate herself was violated. Furthermore, Gladden called Beth as a witness, and Beth voluntarily testified at trial; a dispositive fact that Gladden

17

failed to address on appeal. Accordingly, because Gladden lacks standing to assert Beth's constitutional rights, we need not address the merits of this argument.

## C. Motion for Continuance

Finally, Gladden argues that the circuit court abused its discretion by denying his motion for a continuance based on the State's late disclosure of new evidence. Specifically, Gladden contends that if he had had time to review MC's supplemental medical records, he "would not have sought and agreed to [exclude] the evidence, but rather would have attempted to use them at trial."

During a pretrial hearing, defense counsel noted that he had just received twenty-three pages of MC's medical records from the State and requested a continuance so that Gladden could hire an expert to go through them because he believed that the records "could possibly contain some exculpatory evidence." Alternatively, the circuit court excluded the records. After a recess, defense counsel argued that after reviewing the new medical records, he discovered that MC tested positive for a sexually transmitted infection; thus, he argued for a continuance so that Gladden could get tested for chlamydia and to "peruse [Gladden's] medical records from this time period going forward." Once again, the circuit court denied Gladden's request for a continuance and held that the medical records—specifically anything about chlamydia—was excluded from evidence.

The circuit court shall grant a continuance only on a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition

of the case. Ark. R. Crim. P. 27.3 (2023). The standard of review for granting or denying a motion for continuance is abuse of discretion. *Green v. State*, 2012 Ark. 19, 386 S.W.3d 413. An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion for continuance but also must show prejudice that amounts to a denial of justice. *Jackson v. State*, 2009 Ark. 336, 321 S.W.3d 260.

We hold that Gladden failed to demonstrate either good cause for the continuance or resulting prejudice from the court's denial of the motion. Admittedly, the new evidence that Gladden sought to use was that MC tested positive for chlamydia—as discussed above—and the circuit court held that the evidence was protected by the rape-shield statute and not admissible. Thus, requesting a continuance so that Gladden could get tested for chlamydia does not constitute good cause. Furthermore, on appeal, Gladden does not offer any additional evidence from the excluded medical records that he asserts would have been beneficial to his case or would have affected the outcome of the trial. Therefore, we hold that the circuit court did not abuse its discretion by denying Gladden's motion for a continuance.

## V. *Conclusion*

For the above-stated reasons, we affirm Gladden's second-degree sexual-assault conviction.

Affirmed.

ABRAMSON and THYER, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.